## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DELTA MILLWOOD**                                                                        **PLAINTIFF**

**v.**                                    **Case No.: 4:20-cv-01035-LPR**

**MCKENDRA ADAMS**                                                                **DEFENDANT**

### ORDER

Plaintiff Delta Millwood filed this lawsuit alleging that Defendant McKendra Adams violated the Fair Debt Collection Practices Act ("FDCPA").[1]  Ms. Adams filed a Motion to Dismiss with Prejudice for lack of standing and for failure to state a claim.  For the reasons discussed below, the Motion is GRANTED in part and DENIED in part.  Ms. Millwood's claims under 15 U.S.C. §§ 1692g and 1692e(11) are dismissed, but without prejudice.  Ms. Millwood's claim under 15 U.S.C. § 1692i is not dismissed.

## I.  BACKGROUND[2]

Ms. Adams is a self-described debt collection attorney.[3]  One of her clients is Cannon Finance, Inc. (Cannon Finance).  Cannon Finance is a company that "extends credit to consumers to finance" vehicle purchases.[4]  On September 26, 2015, Ms. Millwood bought a car from Great American Auto LLC and financed her purchase by entering into a "Retail Installment Sale

---

[1] The Court construes Ms. Millwood's First Amended Complaint to raise solely FDCPA claims.  The Complaint has one stray reference to a provision of the Arkansas Fair Debt Collection Practices Act.  *See* Pl.'s First Am. Compl. (Doc. 9) ¶ 5.  The Court does not construe this as asserting a cause of action under that provision.  Even if it did, that provision is the state law equivalent of 15 U.S.C. § 1692e(11).  Because the Court finds that Ms. Millwood does not have standing to bring her federal § 1692e(11) claim, Ms. Millwood would likewise not have standing to bring in federal court the state law version of the same claim.

[2] All facts in this Background Section are taken from Ms. Millwood's First Amended Complaint and are taken as true for purposes of this Order.

[3] Pl.'s First Am. Compl. (Doc. 9) ¶ 20.

[4] *Id.* ¶ 2.

Contract" with Cannon Finance.[5]  Ms. Millwood allegedly defaulted on the financing contract, so Cannon Finance repossessed the car.[6]  On August 29, 2018, Cannon Finance mailed a "Mandatory Notice of Private or Public Sale," informing Ms. Millwood that the car would be sold.[7]  The proceeds from the sale did not cover the full amount of Ms. Millwood's debt.

On August 29, 2019, Cannon Finance (represented by Ms. Adams) filed a lawsuit in Arkansas state court against Ms. Millwood (and co-buyer Shena Maxwell) to collect the remaining amount owed.[8]  Eventually, Cannon Finance voluntarily dismissed that state court suit.[9]  Ms. Millwood brings the instant federal lawsuit against Cannon Finance's attorney, Ms. Adams, based on the way Ms. Adams handled the debt collection lawsuit in state court.  Ms. Millwood alleges that Ms. Adams violated the FDCPA.

*A.  The Statute*

Congress passed the FDCPA to, among other things, "eliminate abusive debt collection practices by debt collectors. . . ."[10]  In this law, Congress prescribed numerous procedures that debt collectors must follow.  Relevant to this case are the procedures that govern a debt collector's "initial communication" with a debtor and the procedures that govern where a debt collector may file a lawsuit against a debtor.[11]

Whenever a debt collector initially communicates with a debtor, the debt collector must do two things.  First, the debt collector must disclose that it is "attempting to collect a debt and that

---

[5] *Id.* ¶¶ 24, 26.

[6] *Id.* ¶¶ 28–29.

[7] *Id.* ¶ 30; *see also* Ex. 3 (Mandatory Notice of Private or Public Sale) to *id.* (Doc. 9-3).

[8] Pl.'s First Am. Compl. (Doc. 9) ¶ 32; *see also* Ex. 1 to *id.* (Doc. 9-1) at 2, 4.

[9] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 55–56.

[10] 15 U.S.C. § 1692(e).

[11] *Id.* §§ 1692e(11), 1692g, 1692i.

any information obtained will be used for that purpose. . . ."[12]   Second, within five days of the initial communication, the debt collector must provide the debtor with a so-called "verification rights notice" containing: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debtor may dispute the debt within thirty days and that failure to dispute the debt allows the debt collector to assume the debt is valid; (4) a statement that if the debtor does dispute the debt within the thirty-day period, the debt collector will provide information verifying the debt; and (5) a statement that upon written request within the thirty-day period, the debt collector will provide the debtor with the name and address of the original creditor if that name and address is different from the current creditor.[13]   Formal legal pleadings, such as a complaint in a debt collection lawsuit, are exempted from the definition of "initial communication."[14]

If a debt collector decides to file a lawsuit against a debtor to collect the amount owed, there are only two options of where to file.[15]   One option is to file the lawsuit in the judicial district where the debtor "signed the contract sued upon."[16]   The other option is to file the lawsuit in the judicial district where the debtor resides at the time of filing.[17]

B.  Ms. Adams's Conduct

On August 29, 2019, Ms. Adams filed the debt collection suit on behalf of Cannon Finance against Ms. Millwood in the District Court of Garland County, Arkansas.[18]   Under the FDCPA,

---

[12] Id. § 1692e(11).

[13] Id. § 1692g(a)(1)–(5); Pl.'s First Am. Compl. (Doc. 10) at ¶ 1.

[14] 15 U.S.C. §§ 1692e(11), 1692g(d).

[15] There is a third provision, but it only relates to debts owed on real property.  Because this case is not about real property, this third option is irrelevant.

[16] 15 U.S.C. § 1692i(a)(2)(A).

[17] Id. § 1692i(a)(2)(B).

[18] Pl.'s First Am. Compl. (Doc. 9) ¶ 32.  The Court acknowledges that it is somewhat odd to refer to a plaintiff's attorney (as opposed to the plaintiff itself) as "filing" a lawsuit.  Usually, we speak of a plaintiff filing a lawsuit because the attorney is simply an agent of the plaintiff.  However, the FDCPA venue provision appears to be directed

that is the wrong place to file.  The debt collection lawsuit should have been filed in Pulaski County, Arkansas.  Ms. Millwood had signed the financing contract with Cannon Finance in Pulaski County, Arkansas.[19]  Ms. Millwood also lived in Pulaski County, Arkansas when that lawsuit was filed.[20]

Ms. Millwood hired an attorney and timely filed her Answer raising affirmative defenses, including improper venue, on October 13, 2019.[21]  The same day, the state court set a trial for February 28, 2020.[22]  On October 16, 2019, Ms. Millwood filed a Motion to Dismiss, based in part on improper venue.[23]  Although Ms. Millwood had timely responded with an Answer and filed a Motion to Dismiss, Ms. Adams (inappropriately) submitted a proposed Default Judgment against Ms. Millwood on October 22, 2019.[24]  On October 25, 2019, the state court (inexplicably) entered and filed the proposed Default Judgment against Ms. Millwood.[25]  On October 29, 2019, Ms. Millwood moved to set aside the Default Judgment.[26]  The next day, Ms. Adams filed and served both a Motion to Vacate the Default Judgment and a Response to Ms. Millwood's Motion to Dismiss.[27]  Despite the Default Judgment snafu, the state court lawsuit was back on track.

---

at the lawyer (not the creditor-plaintiff) even when the lawyer is filing a lawsuit as the agent of the creditor-plaintiff. *See* 15 U.S. § 1692i.

[19] Pl.'s First Am. Compl. (Doc. 9) ¶ 4.

[20] *Id.*

[21] *Id.* ¶¶ 37–39; *see also* Ex. 7 (Ms. Millwood's state court Answer) to *id.* (Doc. 9-7) at 2.

[22] Pl.'s First Am. Compl. (Doc. 9) ¶ 40; *see also* Ex. 8 (Trial Notice) to *id.* (Doc. 9-8).

[23] Pl.'s First Am. Compl. (Doc. 9) ¶ 41; *see also* Ex. 9 (Ms. Millwood's Motion to Dismiss the state court lawsuit) to *id.* (Doc. 9-9).

[24] Pl.'s First Am. Compl. (Doc. 9) ¶ 44.

[25] *Id.* ¶ 45.  The Default Judgment ordered Ms. Millwood to pay $3,323.10 in damages, court fees of $150, attorney fees of $332.31, for a total of $3,805.41.  *Id.*  The state court imposed a post-judgment interest rate of 7.00% per annum.  *Id.*  Ms. Millwood was also ordered to file a schedule of property within forty-five days of the Default Judgment or face the possibility of being held in contempt of court.  *See* Ex. 11 (Default Judgment) to *id.* (Doc. 9-11).

[26] Pl.'s First Am. Compl. (Doc. 9) ¶ 46.

[27] *Id.* ¶¶ 47, 50.

4

Discovery began.  On December 31, 2019, Ms. Adams emailed Ms. Millwood's attorney responses to discovery requests.[28]  On January 8, 2020, Ms. Adams filed and served a Motion to Voluntarily Dismiss the state court lawsuit.[29]   The state court dismissed the suit without prejudice.[30]  Ultimately, Ms. Millwood did not have to pay any deficiency under the financing contract with Cannon Finance.  In fact, Ms. Millwood's instant Complaint indicates that any further attempts to collect the deficiency would be "absolutely barred under [Arkansas law]."[31]

The state court lawsuit could therefore be described as a victory for Ms. Millwood.  But she does not see it that way.  On August 26, 2020, Ms. Millwood filed the instant federal lawsuit.[32]  Ms. Millwood alleges that Ms. Adams violated the FDCPA when Ms. Adams filed the debt collection lawsuit in Garland County, Arkansas, instead of Pulaski County, Arkansas.   Ms. Millwood also alleges FDCPA violations because one of the following constituted an "initial communication" that triggered an obligation to provide a verification rights notice: (1) the Motion to Vacate the Default Judgment; or (2) the email containing the discovery responses.[33]  Neither of these alleged "initial communications" contained a verification rights notice.[34]  No other written notices were sent within five days of either of these alleged "initial communications."[35]

---

[28] *Id.* ¶ 52; *see also* Ex. 16 (Discovery Responses email) to *id.* (Doc. 9-16).  The Complaint alleges that this email exchange took place on December 30, 2019.  Ms. Millwood has provided the email from Ms. Adams to Ms. Millwood's attorney.  The time stamp on the email shows that Ms. Adams sent the email on December 31, 2019.  The Court will use the date from the email that Ms. Millwood attached to the Complaint.  Ms. Millwood has not provided the Court with the information contained in the attachments to that email.

[29] Pl.'s First Am. Compl. (Doc. 9) ¶ 55.

[30] *Id.* ¶ 56.

[31] *Id.* ¶ 7.  Ms. Millwood notes that in a separate case an Arkansas state court ruled that the Mandatory Notice of Private or Public Sale that Cannon Finance used was insufficient under Arkansas state law.  *Id.*  Thus, any attempts to collect a deficiency would be barred under Arkansas's Uniform Commercial Code.  *Id.*

[32] Pl.'s Compl. (Doc. 1).

[33] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 47–49, 52–54.

[34] *Id.*

[35] *Id.*

In the instant case here in federal court, Ms. Adams filed a Motion to Dismiss in response to Ms. Millwood's original Complaint.[36]  After Ms. Millwood amended her Complaint, Ms. Adams filed a Renewed Motion to Dismiss.[37]  The briefing is complete on the Renewed Motion.

## II.  DISCUSSION

Ms. Adams says Ms. Millwood does not have standing to bring any of her claims.[38]  Ms. Adams's standing argument is a "facial attack."[39]  This requires the Court to accept as true all of Ms. Millwood's non-conclusory factual allegations.[40]  The Court's analysis is limited solely to the face of Ms. Millwood's First Amended Complaint.[41]

Article III of the United States Constitution only extends the federal judicial power to "cases or controversies."[42]  By requiring that plaintiffs have standing, federal courts ensure that they do not step outside their constitutional boundaries and render binding decisions in disputes that do not rise to the level of a case or controversy.  Thus, standing is the "irreducible

---

[36] Def.'s Mot. to Dismiss (Doc. 4).

[37] Def.'s Renewed Mot. to Dismiss (Doc. 10).  Ms. Adams incorporates her original Motion to Dismiss into her Renewed Motion, so the Court may refer to both throughout this Order.

[38] Def.'s Mot. to Dismiss (Doc. 4) at 1 (arguing lack of standing for improper venue claim); Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss (Doc. 14) at 4–6 (arguing lack of standing for verification-rights-notice claim).  Ms. Adams also contends that even if Ms. Millwood has standing for her claim based on the missing verification rights notice, she has not sufficiently stated a claim upon which relief can be granted and therefore that claim should be dismissed under Rule 12(b)(6).  Ms. Adams's 12(b)(6) argument relates solely to Ms. Millwood's claim about the verification rights notice.  Because the Court finds that Ms. Millwood does not have standing for this claim (or the closely related claim under 15 U.S.C. § 1692e(11)), the Court does not reach the 12(b)(6) issue.  Ms. Adams has not launched a 12(b)(6) attack on Ms. Millwood's improper venue claim.  For that claim, the Court is only concerned with whether Ms. Millwood has standing.

[39] Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 5) at 2.

[40] *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

[41] The face of Ms. Millwood's Complaint includes all materials "necessarily embraced by the pleadings and exhibits attached to the complaint."  *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).  Any additional factual allegations contained in Ms. Millwood's Opposition to the Renewed Motion to Dismiss or her Response to Ms. Adams's Notice of Supplemental Authority are not considered.

[42] *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 929 (8th Cir. 2016).

constitutional minimum" that must be met before a federal court has jurisdiction to hear a plaintiff's claim.[43]

Article III standing has three requirements.  First, the plaintiff must allege that it has "suffered an 'injury in fact. . . .'"[44]  The injury "must be both concrete and particularized and actual or imminent, not conjectural or hypothetical."[45]  An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way."[46]  An injury is "concrete" when it "actually exist[s]."[47]  Second, the injury must be fairly traceable to the alleged wrongdoing of the defendant.[48]  Traceability requires "showing the injury resulted from the actions of the defendant. . . ."[49]  Third, a favorable judicial decision must be "likely" to cure the plaintiff's injury.[50]

## A. Ms. Millwood's Standing for Claim Under 15 U.S.C. § 1692g

Ms. Adams contends that Ms. Millwood has not alleged an injury-in-fact.  Ms. Millwood alleges that "failure to give [a debtor] the information required by [15 U.S.C. § 1692g] is a concrete harm that confers standing. . . ."[51]  There are two ways to read this.  The first way is to read it as

---

[43] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[44] *Lujan*, 504 U.S. at 560.

[45] *Braitberg*, 836 F.3d at 929 (quoting *Lujan*, 504 U.S. at 560–61) (internal quotations omitted).

[46] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

[47] *Id.*  Concrete does not necessarily mean tangible.  "Various intangible harms can also be concrete.  Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  Ms. Millwood says the harm alleged in her § 1692g and § 1692e(11) claims (failure to obtain information) is concrete because that harm "is analogous to a suit for an accounting at common law because both provide an aggrieved party the right to information important to them."  Pl.'s Opp'n to Mot. to Dismiss (Doc. 13) at 18.  Whether this is a fair comparison is a question for another day.  Ms. Millwood has not alleged a concrete injury because she does not allege that she was actually deprived of any information.  Even if she was, she suffered no consequences from that deprivation.  *See infra* notes 58–69 and accompanying text.

[48] *Lujan*, 504 U.S. at 560.

[49] *Oti Kaga, Inc., v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003).

[50] *Lujan*, 504 U.S. at 561.

[51] Pl.'s First Am. Compl. (Doc. 9) ¶ 61.

Ms. Millwood arguing that the violation of § 1692g is enough on its own to confer standing.  The second way to read it is that Ms. Millwood is asserting a so-called "informational injury."[52]

Option number one, the violation-as-injury argument, is understandable yet unavailing. When Congress passes a statute that creates new rights for individuals and gives those individuals a cause of action to enforce those rights, one could be forgiven for believing that any violation of those rights would be sufficient to confer standing.[53]  For a while, many federal courts followed this line of thinking.[54]  But no longer.  In *Spokeo, Inc. v. Robins*, the Supreme Court clarified that while a violation of an individual's statutory rights may be a "particularized" injury, it is not necessarily a "concrete" one.[55]  A "bare procedural violation, divorced from any concrete harm," is insufficient under Article III because a procedural violation "may result in no harm."[56]  There must be something more than just the statutory violation.  Ms. Millwood must show that the specific alleged violation caused her harm.[57]  As the Supreme Court recently noted, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."[58]

Option number two, the "informational injury" argument, is likewise defective.  Ms. Millwood does not allege that she did not have the information required by 15 U.S.C. § 1692g.

---

[52] *See Ramirez*, 141 S. Ct. at 2214.

[53] *See Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

[54] *See Braitberg*, 836 F.3d at 929–30 (discussing pre-*Spokeo* cases in which the statutory violation alone was sufficient to confer Article III standing).

[55] 136 S. Ct. at 1548.

[56] *Id.* at 1549, 1550.

[57] *Id.* at 1550 (remanding the case because the lower court "did not address . . . whether the *particular* procedural violations alleged *in this case* entail a degree of risk sufficient to meet the concreteness requirement" (emphasis added)).

[58] *Ramirez*, 141 S. Ct. at 2205 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)).

Ms. Millwood merely alleges that Ms. Adams failed to give it to her in the manner required by the FDCPA.[59]   Nowhere in her First Amended Complaint does Ms. Millwood claim that she did not know the amount of the debt she allegedly owed or the name of the creditor to whom the debt was owed.[60]   She does not allege that she did not know that she had an opportunity to dispute the debt.[61]

The closest Ms. Millwood comes to alleging an informational injury is that "[Ms.] Millwood had a valid dispute . . . because Cannon Fin[ance] used a [Mandatory Notice of Private or Public Sale] that was insufficient under [Arkansas law]."[62]   It seems that Ms. Millwood is alleging that if Ms. Adams had provided a formal verification rights notice, Ms. Millwood would have known about the insufficiency of the Mandatory Notice of Private or Public Sale and therefore would not have to pay the debt.  This argument is problematic because a debtor is only entitled to additional information under § 1692g if the debtor decides to dispute the debt.[63]   Here, Ms. Millwood never alleges that she would have disputed the debt under § 1692g.[64]   Thus, she does not actually allege that she missed an opportunity to obtain any information.[65]   Even if she had alleged an intent to dispute the debt under § 1692g, there is no reason (from either the instant Complaint or § 1692g) to believe that Ms. Adams would have had to provide *any* information

---

[59] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 47–49, 52–54.

[60] 15 U.S.C. § 1692g(a)(1)–(2).

[61] *Id.* § 1692g(a)(3)–(5).  It seems impossible for Ms. Millwood to claim that she did not know that she could dispute the debt, considering that by the time the alleged violation occurred she had retained an attorney and filed an Answer *disputing that she owed a debt to Cannon Finance.  See* Ex. 7 (Ms. Millwood's state court Answer) to Pl.'s First Am. Compl. (Doc. 9-7) at 3.

[62] Pl.'s First Am. Compl. (Doc. 9) ¶ 7.

[63] *See* 15 U.S.C. § 1692g(a)(3)–(5).

[64] It would not make much practical sense to use § 1692g to dispute the debt, after all.  Ms. Millwood was already disputing the debt in state court and had the option to pursue discovery (an option she exercised) to obtain any information she felt that she needed but did not already have.

[65] As then-Judge Barrett put it when sitting on the Seventh Circuit, Ms. Millwood's First Amended Complaint merely alleges that she was "missing some information that she did not suggest that she would ever have used."  *Casillas*, 926 F.3d at 334 (Barrett, J.).  *Casillas* was a case regarding insufficient notice of a debtor's verification rights under 15 U.S.C. § 1692g and was favorably cited multiple times by the Supreme Court in *Ramirez.*

about the Mandatory Notice of Private or Public Sale as part of a formal verification under the FDCPA.[66]

Even if Ms. Millwood alleged that she was *completely* deprived of *all* information under § 1692g (she does not and cannot allege this), she still did not allege any consequences from that deprivation.  "An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"[67]  Ms. Millwood must display "downstream consequences" flowing from the informational deprivation.[68]  But there are no such consequences alleged in the instant Complaint. Quite the opposite, in fact.  The debt collection lawsuit was voluntarily dismissed by Ms. Adams and Cannon Finance.  Ms. Millwood's own Complaint here in federal court indicates that Ms. Adams and Cannon Finance cannot successfully bring any future actions against Ms. Millwood to collect the debt.  Ms. Millwood did not suffer *any* consequences because of Ms. Adams's failure to provide a formal verification rights notice.

One could perhaps read Ms. Millwood's references to incurring attorney fees as alleging an injury-in-fact flowing from Ms. Adams's alleged § 1692g violation.  However, there are no allegations that any portion of Ms. Millwood's attorney fees were related to her not receiving a formal verification rights notice.  Instead, all references to attorney fees are in relation to her attorney raising the defense of improper venue, an allegation tied to Ms. Millwood's § 1692i claim (discussed below).  Ms. Millwood's instant Complaint does show that her attorney engaged in discovery, a process through which Ms. Millwood and her attorney obtained information from Ms.

---

[66] Verification is meant to ensure that the debt collector has identified the correct person.  *See Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011).  Ms. Millwood does not allege that Ms. Adams identified the wrong person.  In the Eighth Circuit, a § 1692g verification could simply be an affidavit from the debt collector or creditor stating that its records show that this specific debtor owes a debt to the creditor.  *Id.* at 999, 1003.

[67] *Ramirez*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004) (11th Cir. 2020)).

[68] *Id.* (quoting *Trichell*, 964 F.3d at 1004).

Adams and Cannon Finance.  But there are no allegations that Ms. Millwood and her attorney would have been able to avoid discovery if she had received a formal verification rights notice. Any attorney fees related to discovery would therefore not be fairly traceable to the alleged § 1692g violation.[69]  Thus, Ms. Millwood does not have standing to bring her claim against Ms. Adams under 15 U.S.C. § 1692g.

## B.  Ms. Millwood's Standing for Claim Under 15 U.S.C. § 1692e(11)

Ms. Millwood's claim that Ms. Adams violated 15 U.S.C. § 1692e(11) meets the same fate as her § 1692g claim and for the same reasons.  That provision requires a debt collector to notify a debtor that the debt collector is "attempting to collect a debt and that any information obtained will be used for that purpose. . . ."[70]  Ms. Millwood does not allege that she did not know Ms. Adams was a debt collector for Cannon Finance.  By the time the alleged violation occurred, Ms. Millwood had hired an attorney and filed an Answer disputing the debt.  Thus, Ms. Millwood had all the information required by § 1692e(11) by the time the alleged violation occurred.  There is no concrete injury.  There is no standing.

## C.  Ms. Millwood's Standing for Claim Under 15 U.S.C. § 1692i

Ms. Millwood claims that she has suffered an injury-in-fact because she had to pay an attorney to defend her in the state court lawsuit.[71]  Loss of money is a concrete injury-in-fact that

---

[69] This analysis regarding attorney fees as an injury-in-fact applies equally to Ms. Millwood's claim under 15 U.S.C. § 1692e(11).  Even if she were alleging that attorney fees were an injury-in-fact flowing from that alleged violation, there are no allegations in Ms. Millwood's instant Complaint to satisfy the traceability prong of standing.

[70] 15 U.S.C. § 1692e(11).

[71] Pl.'s First Am. Compl. (Doc. 9) ¶¶ 4, 37–38, 60.  Ms. Millwood also alleges that there is a concrete harm because Ms. Adams's alleged violation presented a "real risk of harm [that debtors] will either incur additional time or expense to travel to the inconvenient forum or cannot defend themselves and risk entry of a default judgment."  Id. ¶ 59.  The *risk* of real harm is not a concrete injury sufficient to confer standing in a suit for compensatory damages.  The risk of real harm must materialize into real harm.  *See Ramirez*, 141 S. Ct. at 2210–11.  Ms. Millwood does show that a Default Judgment was entered against her for failure to appear.  *See* Pl.'s First Am. Compl. (Doc. 9) ¶ 62; *see also* Ex. 11 (Default Judgment) to *id.* (Doc. 9-11).  That Default Judgment is not sufficiently traceable to the alleged improper venue violation, however.  Ms. Millwood timely filed an Answer as well as a Motion to Dismiss.  Thus, she was able to defend against the lawsuit despite the inconvenient forum.  The Default Judgment is instead traceable to, at best, a

is recoverable under the FDCPA.[72]  A favorable judicial decision in this lawsuit would therefore cure Ms. Millwood's injury.  Thus, the only remaining question is whether this injury is fairly traceable to Ms. Adams's conduct.

Ms. Adams says Ms. Millwood's attorney fees are not fairly traceable to Ms. Adams filing the lawsuit in an improper venue.  According to Ms. Adams, any money lost paying an attorney is only traceable to the improper venue violation if Ms. Millwood "hired an attorney to defend against a debt collection lawsuit, but only because it was filed in Garland County instead of Pulaski County."[73]  Put another way, Ms. Adams argues that Ms. Millwood's financial injury is only traceable to Ms. Adams's alleged violation if Ms. Millwood "would have proceeded pro se, if only she had been sued in the right county."[74]

Ms. Adams's analysis is too broad.  She may be correct that some of Ms. Millwood's attorney fees would have been incurred even if the state court lawsuit had been filed in Pulaski County.  Still, Ms. Millwood alleges that she had to pay her attorney to assert the defense of improper venue.  The only reason Ms. Millwood's attorney had to raise that defense is because Ms. Adams allegedly violated 15 U.S.C. § 1692i by filing the lawsuit in Garland County.  Even if

---

mistake by Ms. Adams and the state court.  At worst, perhaps it was the result of an intentionally fraudulent practice on the part of Ms. Adams.  Either way, no allegations in the instant Complaint show that the Default Judgment was caused by the alleged improper venue violation.  The Default Judgment does lead to standing for some of Ms. Millwood's other claims, *see infra* Section II.D., but not her improper venue claim.

Ms. Millwood has also alleged that she suffered emotional distress from being sued in a foreign venue.  Pl.'s First Am. Compl. (Doc. 9) ¶ 4.  This allegation may have provided another concrete injury for Ms. Millwood to bring her improper venue claim.  *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691–92 (8th Cir. 2017) (finding that "the risk of mental distress" is a concrete injury for a suit under 15 U.S.C. § 1692f(1)).  Because Ms. Millwood has standing to bring her improper venue claim based on incurring attorney fees in the state court lawsuit, the Court does not need to address whether the emotional distress is a separate concrete injury.  Whether Ms. Millwood may recover for the alleged emotional distress is a question for a later time.

[72] The FDCPA allows the recovery of "any actual damages sustained" by a debtor because of a debt collector's violation.  15 U.S.C. § 1692k(a)(1).

[73] Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 5) at 5.

[74] Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss (Doc. 14) at 2.

the portion of Ms. Millwood's attorney fees attributable to raising that defense is very small, it is still a loss of money that is fairly traceable to Ms. Adams's alleged violation.[75]   Thus, Ms. Millwood has standing on her improper venue claim.

*D.  Ms. Millwood's Other FDCPA Claims*

In her instant Complaint, Ms. Millwood also alleges that Ms. Adams violated various other provisions of the FDCPA.[76]  Ms. Millwood does not flesh out these violations to the same extent as her other claims.  Ms. Adams does not attack Ms. Millwood's standing for these claims.  Ms. Adams likewise does not launch a Rule 12(b)(6) attack on any of these claims.  In fact, Ms. Adams makes no mention of these alleged violations in her original Motion to Dismiss, her Renewed Motion to Dismiss, her Reply to Plaintiff's Opposition to the Motion to Dismiss, or her Notice of Supplemental Authority.

While Ms. Adams has decided not to address these additional allegations against her, the Court has an independent obligation to examine whether Ms. Millwood has standing to bring these claims.[77]  The provisions listed by Ms. Millwood relate to false or misleading representations and unfair practices.[78]  The improper Default Judgment submitted by Ms. Adams and filed by the state court in the debt collection lawsuit is the only allegation in Ms. Millwood's instant Complaint that

---

[75] *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

[76] *See* Pl.'s First Am. Compl. (Doc. 9) ¶ 64 (alleging violations of 15 U.S.C. §§ 1692(d), 1692e, 1692e(5), 1692e(10), and 1692f, in addition to the claims discussed above in this Order).

[77] *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]he court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").

[78] *See* 15 U.S.C. § 1692e (titled "[f]alse or misleading representations"); *Id.* § 1692e(5) (prohibiting "[t]he threat to take any action that cannot legally be taken. . ."); *Id.* § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning [a debtor]"); *Id.* § 1692f (titled "[u]nfair practices").  Ms. Millwood also cites *id.* § 1692(d), but that is simply a congressional finding that "[a]busive debt collection practices are carried on to a substantial extent in interstate commerce. . . ."  It is possible she meant to cite *id.* § 1692d, which provides a list of actions that constitute "[h]arassment or abuse."

would seem to fall under the umbrella of false, misleading, or unfair representations or practices. It appears then that these claims purportedly arise from that improper Default Judgment.

Ms. Millwood alleges that the entry of the improper Default Judgment against her "meant that she was potentially subjected to pay the filing fee for an appeal . . . to having her wages garnished; or being held in contempt of court if she did not file a schedule of assets."[79]  This is a "risk of real harm" argument.  After the Supreme Court's decision in *TransUnion LLC v. Ramirez*, the risk of harm alone is not a sufficiently concrete injury to confer standing to a plaintiff seeking compensatory monetary damages.[80]  Ms. Millwood does not allege that any of these potential harms materialized into real harm.  Indeed, the Default Judgment was vacated before any of these harms had a chance to materialize.

But these potential harms are not the only injuries alleged on the face of Ms. Millwood's instant Complaint.  Ms. Millwood hired and paid an attorney.  Ms. Millwood's attorney filed a Motion to Set Aside the Default Judgment.[81]  The only reason her attorney had to file that Motion is because Ms. Adams improperly submitted a Default Judgment to the state court.  While the portion of her attorney fees related to filing that Motion may be very small, it is still a loss of money that is fairly traceable to Ms. Adams's submission of a proposed Default Judgment.[82]  Thus, Ms. Millwood does have standing to bring these claims based on the improper Default Judgment.

---

[79] Pl.'s First Am. Compl. (Doc. 9) ¶ 62.

[80] *See Ramirez*, 141 S. Ct. at 2210–11.

[81] Pl.'s First Am. Compl. (Doc. 9) ¶ 46; *see also* Ex. 12 (Ms. Millwood's Motion to Set Aside Default Judgment) to *id.* (Doc. 9-12).

[82] *Czyzewski*, 137 S. Ct. at 983 ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

**CONCLUSION**

Ms. Adams's Motion to Dismiss with Prejudice is GRANTED in part.  Ms. Millwood does not have standing for her claims that Ms. Adams violated 15 U.S.C. §§ 1692g and 1692e(11).  Ms. Millwood has not alleged a concrete injury as a result from any of those alleged violations.  These claims are dismissed, but without prejudice.[83]

The remainder of Ms. Adams's Motion to Dismiss with Prejudice is DENIED.  Ms. Millwood has standing to bring her claim that Ms. Adams violated 15 U.S.C. § 1692i.  Ms. Millwood has alleged a concrete injury—monetary loss—that is fairly traceable to Ms. Adams's alleged violation of § 1692i.

The remaining allegations in Ms. Millwood's First Amended Complaint were not addressed by Ms. Adams's Motion to Dismiss with Prejudice.  The Court has conducted an independent review of Ms. Millwood's standing to bring those claims.  Ms. Millwood does have standing (at least at this stage) to bring those claims based on the improper Default Judgment submitted by Ms. Adams in the state court debt collection lawsuit.[84]

IT IS SO ORDERED this 29th day of September 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[83] "A dismissal for lack of standing is a dismissal for lack of subject-matter jurisdiction.  'A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.'"  *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (quoting *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)).

[84] As explained *supra*, the Court's conclusion here is based on its understanding that Ms. Millwood's 15 U.S.C. §§ 1692(d), 1692e, 1692e(5), 1692e(10), and 1692f claims are based on the Default Judgment.  If that assumption later turns out to be incorrect, the Court may have to revisit its standing analysis on these claims.